UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-10019-CR-KING-SNOW

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

ARAMIS PENATE SIGLER,

      Defendant.

_____/

## OPINION AND ORDER RE-SENTENCING DEFENDANT

## PROCEDURAL BACKGROUND

The Defendant, Aramis Penate Sigler, was sentenced on February 2, 2009, upon his plea of guilty to Count I of a 22-count Indictment charging him with conspiracy to smuggle aliens into the United States in violation of 8 U.S.C. § 1324. After consideration of the objections of the parties to the Pre-Sentence Investigation Report, Defendant was sentenced to imprisonment by the Bureau of Prisons for 46 months, followed by a three-year supervised release with special conditions; payment of $1,000 fine and the $100 assessment required by law (D.E. #58 and 59).

Upon appeal, the United States Court of Appeals for the Eleventh Circuit affirmed Siglers's sentence in part and vacated and remanded in part concluding that this Court had erred when it applied a two-level enhancement for reckless endangerment during flight (D.E. #70). The Court remanded Defendant's case to this Court to make specific factual findings ". . . regarding whether Sigler actively caused the high-speed flight from

the Coast Guard, or aided and abetted his co-defendant's conduct." (D.E. #70, pp. 3 and 4).

In compliance with the Court's mandate to make more specific findings regarding the high-speed chase and two-level enhancement of the Defendant's advisory guideline range, the Court ordered counsel for Defendant and the Government to brief all issues, both legal and factual, ". . . together with a list of all witnesses (if any), that either party intended to call at the evidentiary hearing the Court proposed to hold if re-sentencing of Defendant were to be required." (D.E. #75)[1] Defendant's response (D.E. #76) stated the Defendant did not intend to call any witnesses or to offer any other evidence, electing to rely upon the legal burden of the Government to prove by a preponderance of the evidence the reckless endangerment to the lives of the twenty smuggled Cuban men, women and children on board.

The Government, in its response of April 12, 2010 (D.E. #77) provided Application Note 5 to § 3C1.2 of the advisory guidelines asserting ". . . it proceeded under the theory that Penate Sigler aided and abetted Garcia's (co-conspirator) conduct

---

[1] At this juncture, it was the Court's intent to have a full evidentiary hearing with sworn testimony by all witnesses for both sides in order to give a complete record to the Court of Appeals for any future considerations of the decisions of this Court and possible subsequent appeals. Although the opinion of the Court of Appeals (D.E. #70) is clear that only articulation of the Court's reasons for the two-level enhancement based upon the existing record was all that was required to comply with the Court's mandate, this Court felt that would be unfair to the Defendant since any future appeal (either by the Government or the Defendant) would take longer to complete than has remaining on his sentence to serve.

by working in tandem with Garcia during the alien-smuggling venture."[2]

Government's response further pointed out that all of the illegally smuggled aliens had been repatriated to Cuba (except one woman who was med-evacuated off the Coast Guard cutter for her injuries - who could not be located) and weren't available for the evidentiary hearing the Court wished to hold. The Government further said that Coast Guard personnel involved in the chase could add nothing to what they had already given and which had been included in the record about what was happening on the smuggler's boat during the approximate 1-hour high-speed chase across the ocean.[3]

The Government's reply memorandum concluded with the recommendation that the Court reduce the Defendant's sentence giving him credit for a 2-level reduction in the advisory guideline range.[4]

---

[2] The U.S. Probation Office on p. 2 of the Addendum to the Pre-Sentence Investigation Report advised the Court:

"Application Note 5 to § 3C1.2 indicates ". . . the defendant is accountable for his own conduct and for the conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused."

The defendant was equally involved with his co-defendant in the smuggling of aliens into the United States. While he may not have actually been piloting the boat at the time of the chase, he is still held accountable for all acts committed by the conspiracy in the course of its criminal conduct. Therefore it remains the position of the U.S. Probation Officer that the enhancement under § 3C1.2 remains warranted. This issue is unresolved."

[3] According to the government, there was only one life jacket on board the vessel. There also were no unaccompanied minors and no immediate relatives of the conspirators on board. As previously indicated, some injuries did occur during the course of the flight from the Coast Guard vessels during which, according to the USCG personnel at the scene, the go-fast boat assumed an almost vertical position at times during a chase which lasted approximately one hour.

[4] "As such and in light of the 11th Circuit's ruling requiring an additional factual basis, the Government asserts that it cannot provide any additional facts supporting a 2-level enhancement pursuant to § 3C1.2 and respectfully requests the Court re-sentence the Defendant absent the two points. Accordingly, the Defendant was initially found to have an offense level 21 with an advisory guideline range of 37-46 months' imprisonment. Excluding the 2-level enhancement, the

## ARTICULATED REASONS FOR THE COURT'S ORIGINAL FINDING OF A TWO-LEVEL ENHANCEMENT OF THE ADVISORY GUIDELINES FOR RECKLESS ENDANGERMENT OF LIFE

The facts of this record could not be clearer than the statements of the Probation Officer as reported in the Pre-Sentence Investigation Report. Imagine if you will, a gut wrenching high-speed, wave-smashing, midnight flight across an open ocean, without navigational lights to prevent crashing into a reef or floating obstacle in a small go-fast boat that ". . . assumed an almost vertical position at times during a chase lasting approximately one hour." (PSI, ¶18). The imminency of bodily injury and potential death must have convulsed the helpless passengers with abject terror. If the persons responsible for continuing, for over an hour, this nightmare scenario are not guilty of "reckless endangerment during flight," then there is no circumstance that one can reasonably imagine that would qualify.

In actual fact, serious injuries did occur from the brutal beating the victims received from being thrown about in the boat.[5]

---

adjusted offense level will be 19, with an advisory guideline range of 30-37 months' imprisonment. The Government respectfully requests this Court sentence the Defendant at the high end of the advisory guideline range, specifically to 37 months' imprisonment."

[5] Three Cuban nationals sustained injuries including a small girl with cuts down her leg, an adult woman with a large cut on the bottom of her foot, and a man with an injured knee. Almost all of the Cuban nationals claim to have back pain and bruising that occurred during the boat ride when the USCG pursued the nationals. The adult woman, Zonia Villasante, had to be med-evacuated off the Cutter due to her injuries. She went unconscious while on board the Cutter and so she and her three children were transported to Lower Keys Medical Center, where she received medical attention.

4

## WAS DEFENDANT SIGLER EQUALLY RESPONSIBLE
## WITH CO-CONSPIRATOR GARCIA?

The Probation Officer said so. (See ¶19 "considered equally culpable" and ¶23 PSR).

The Sentencing Guidelines Manual states that a defendant is held accountable for his own conduct and for the conduct that he aided or abetted, counseled, commanded, induced, procured or willfully caused. The law of accountability for the acts of a co-conspirator during the commission of a criminal conspiracy needs no citation to hold a defendant accountable for all the acts of a co-conspirator in furtherance of the crime.

The record is quite clear that this Defendant, along with his co-conspirator, participated freely and voluntarily (as he has so admitted in his plea) with the act of getting a vessel in Florida, navigating it over the high seas to Cuba, picking up a boatload of Cuban nationals with the intent to smuggle them into the United States, and bringing them back over the open seas at night without navigational lights in very dangerous conditions to sixty miles off Islamorada where he was interdicted by the U.S. Coast Guard. Every single step of this was done both under the aiding and abetting concept and the conspiracy concept of the criminal law. The Defendant Sigler pled guilty to committing all these acts.

The record is clear that the co-conspirator Garcia was piloting the boat loaded with aliens, fleeing from the Coast Guard, but this poses the next logical question; "When did the conspiracy and aiding and abetting stop?" Did the Defendant Sigler suddenly stop

5

aiding and abetting and conspiring with Garcia, at the point the Coast Guard came on the scene - when he had been industriously involving himself with every aspect of the smuggling venture together with his co-conspirator during the entire period of the trip from Florida to Cuba and Cuba back to the Florida Keys? Can one logically say that at that point the Defendant stopped the activity that would hopefully evade the Coast Guard and end up with success of the illegal smuggling venture? Can one say that on the basis of this record, where the Defendant was caught red-handed in a boatload of smuggled Cuban nationals fleeing from the Coast Guard for over an hour in the high seas, that he was no longer aiding and abetting or conspiring with his co-conspirator? The record is clear that he was on the small boat where logically he had the clear ability to take some step to stop the madness of the high-speed chase under these circumstances by either (a) pulling the speed levers to off, (b) remonstrating with his co-conspirator driver, (c) pushing the co-defendant away and taking control of the boat, or even (d) waving and shouting to the Coast Guard that he was withdrawing from the conspiracy. We know none of these things were done because the boat continued to flee from the Coast Guard until the Coast Guard threatened to shoot it out of the water.

Under all these circumstances, it is quite clear that by his participation, he was responsible for reckless endangerment of life through. It is a fact, he was there. It is a fact from this record that the boat did not stop. The only conclusion is that not only did he not try to stop the boat, but he participated in the ongoing chase and endangerment of human life, just as he had cooperated, conspired and aided the boat driver Garcia in

6

everything they had jointly done throughout this smuggling crime.

Although both the Government and the defense seem to think this Court's function is an automatic reduction of sentence, one interpretation of the opinion from the Court of Appeals is certainly that it was sent back to give this Court an opportunity to express and articulate its reasons for the decision it originally made at sentencing on February 2, 2009. The Court appreciates that opportunity and believes that this opinion, thus far, does comply with the mandate to state the Court's reasons.

However, this may not end the Court's responsibility to ensure fairness and justice to the parties. Were the matter to end here, with the original sentence including the two-level enhancement for endangerment of life remaining as a part of the 46-month imprisonment term imposed February 2, 2009 by this Court, Defendant would be entitled to seek a second appeal. On such an appeal, the issue would be whether the Court's articulated reasons satisfy the concerns expressed by the mandate remanding in part for more specific findings, or not. Defense counsel would, in the opinion of the Court, be justified in seeking such an appeal and indeed will probably have a duty so to do.

The Court is confident that any such appeal would be timely administered and decided, it nevertheless could take nine to ten months for final determination. Eve if the Defendant should prevail on such an appeal, it would be a pyrrhic victory, since the time he would have otherwise been required to serve under this Court's Judgment of February 2, 2009 would have passed. This could, of course, result in an unfairness to the Defendant.

7

## SUMMARY

As a practical resolution of the issues and in fairness to the Defendant, the Court has decided to exercise its broad discretion and sentencing matters to enter by separate Order either (a) an amendment to this Court's Judgment of February 4, 2009 (D.E. #59) or, (if this is procedurally not appropriate) then to (b) strike the Judgment and enter a new Judgment and Commitment reflecting a new advisory guideline range, excluding the two-level enhancement.  By this separate and either amended (or new) Judgment, the Court would sentence the Defendant to 37 months' imprisonment or reduction of nine months in the Judgment that was imposed by D.E. #59.  All other terms and conditions of the original Judgment entered of record February 4, 2009 would remain in place in any new or amended judgment; namely, supervised release for a terms of three years, a fine in the amount of $1,000 and the assessment of $100.[6]  It is therefore,

ORDERED, ADJUDGED and DECREED and the parties are ordered to confer with each other and draft an appropriate final order of either (a) new Judgment and Commitment or (b) Amended Judgment and Commitment, whichever is appropriate under the law, embodying the Court's sentencing decision reflected in the foregoing Opinion. This shall be accomplished as soon as possible so as to enable the Defendant to be released under the new sentence by the Bureau of Prisons.

---

[6] The parties should be advised that the Court has carefully re-read all of the pleadings in this case including the transcripts of the pleas of guilty of December 1, 2008 and of sentencing February 2, 2009.  The announcements set forth above of the sentence the Court will propose to enter is based upon the careful consideration of all the transcripts, Pre-Sentence Investigation Reports, objections thereto, and pleadings of the parties.

DONE and ORDERED in chambers at the James Lawrence King Federal Justice

Building and United States District Courthouse, Miami, Florida this 21st day of April,

2010.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

**Counsel for Plaintiff:**
Kelly S. Karase, AUSA
U.S. Attorney's Office
99 N.E. 4th Street
Miami, FL 33132

**Counsel for Defendant Aramis Penate Sigler:**
Chantel R. Doakes, AFPD
Federal Public Defender's Office
One E. Broward Blvd.
Suite 1100
Ft. Lauderdale, FL 33301

**Defendant:**
Aramis Penate Sigler
Reg. # 39339-004
CI Adams County Correctional Institution
20 Hobo Fork Road
Natchez, Mississippi 39120

Paul Czekanski, U.S. Probation Officer
U.S. Probation Office
United States Courthouse
301 Simonton Street
Suite 230
Key West, FL 33040